2365-85, Galicia-Gonzalez v. Garland. Good morning, your honors, and may it please the court. Brian Chabot from Wilmer, Cutler, Pickering, Hale, and Dorr for Petitioner Hugo Galicia. It is a basic principle of administrative law that courts accept or reject an agency's decision based on the rationale that the agency provided. In this case, it is undisputed that the Board of Immigration Appeals did not entertain Mr. Galicia's primary argument on appeal, and it is undisputed that this was an error. This is an easy case for remanding to the agency to actually consider and address the arguments that Mr. Galicia raised before it. It's a pure question of law, though, right? So we could go ahead and address that ourselves. It is a pure question of law, and the court could go ahead and address it itself. But the ordinary remand rule is that the court will remand to the agency to address it. The Supreme Court announced this rule in Orlando Ventura and in Neguse and said that for a statute that the agency administers, the ordinary remand rule that applies except for extraordinary circumstances is that the agency should have the first crack at saying what the statute means. It's true that this court in Ojo v. Garland and in other cases has said that remand is not required if it would be futile. And has given examples of futility such as where the agency provided alternate grounds for denying relief, that we're not infected by the error, that the error is tangential, or that overwhelming evidence supports the finding and the evidence is untainted by the error. But none of those bases for futility exist here. The government's only arguments for futility are two. One, it says that the BIA lacks jurisdiction because Mr. Galicia is advancing a claim under international law. This court's decision in Bahari 2 forecloses that argument entirely. It addressed this exact same point, whether or not a claim based in the INA was actually arising under international law that the BIA could not consider, and it held that it was a question of interpretation of the INA and not a claim for relief under international law. But it's a claim asking for an interpretation of the INA based upon international law. Is that what the BIA is in business to do? So your honor, the futility question the government raises gets to the BIA's jurisdiction. I think the BIA squarely has jurisdiction to interpret the INA, and it interprets it consistent with customary international law under the charming Betsy Cannon. But the government's argument for futility. But the BIA would then have to figure out what is customary international law, right? That's true, your honor. That's in the second step. That's not what they do every day, whether they can or not, I don't know. So the first step of the interpretation would be whether or not the statutory provision is ambiguous. That's the sort of question that the Supreme Court's decisions in Orlando and the Goosey say the agency ought to take the first crack at. The second step, and one of the second steps, if they determine that the statute is ambiguous, then they would deploy the ordinary canons of statutory construction. And I think it is true that the BIA is no more equipped to deploy ordinary canons of statutory construction, including the charming Betsy Cannon. What's ambiguous about exceptional and extremely unusual hardship? How is that ambiguous? The ambiguous term in the statute is really the word hardship. And I think the best- So just, sorry to interrupt, but you don't dispute then that the comparative part, the exceptional and extremely unusual, is unambiguous. That's correct, your honor. I don't think the comparative part is ambiguous. The ambiguity is in the- If whenever a child's parent is deported, that will cause hardship, right? So the exceptional and exceptional part of the statute has to apply for everyone in that situation, is that right? It may not be the case that every time a parent is deported, it would cause a hardship. It's probably the case that in the vast majority, it would cause a hardship. But I don't think that gets to whether or not the term hardship is ambiguous. And on that question, I would point the court primarily to the Supreme Court's decision in INS versus Yong Ha Wong, which is 450 U.S. 139, 1981. It's relied on by the Third Circuit's decision in- I'm sorry to interrupt again, but I don't understand why it matters what hardship means, even if we grant that that's ambiguous, if we still have to do the comparison part. And if we're looking at the best interest of the child, we still have to, as I understand it, apply the exceptional, extremely unusual for the comparison. I agree with that, your honor. But the question of what hardship means is critical because it determines what it is that's being compared. And so the distinction between what the BIA currently holds and what a best interest of the child analysis would incorporate is whether you're looking at two different things. Are you looking at the circumstances the child is left in and saying, is the child left destitute? Will they have support? Or are you looking at what the result, what the loss the child is suffering is going to be? And so in Mr. Galicia's case, the board said, or the immigration judge said, that in part, there was no hardship here, no extreme and unusual hardship here. Because Mr. Galicia provides for his family, he's bought a house for them, he has savings. So if he's removed from the country, his children won't be left destitute. If you interpret hardship to only mean what circumstances are you left in, as the BIA's current analysis does, then you would find, as the immigration judge did, that Mr. Galicia is not able to show an extreme and unusual hardship. But if you take into consideration the loss that his children will suffer, the loss that his children will experience if Mr. Galicia is removed, an especially good parent, then I think you could reach a different outcome. I'm not sure that the immigration judge will reach a different outcome here on remand, but the avenue would be available to him under that construction, and I- Most children whose parents are deported will experience that kind of hardship. What, aren't you reading out the comparative part of the statute? I don't think so at all, Your Honor, because most children will experience both kinds of hardship. I would submit that there is two ways to interpret hardship, and that most children will experience both kinds of hardship. And then once you conclude that they do, you do the comparative analysis, and you say, it is only for the exceptional and extremely unusually good parent, or good circumstances that the child would lose out on, that you would entitle you to consideration for eligibility for cancellation of removal. So that will put the IJ in the business of considering not just, is this child deprived of a parent who drives them to and from school, is the primary physical caretaker, is the primary breadwinner, those sort of objectively provable facts, but somehow into whether this is a very loving parent, and whether the emotional loss to the child will be more or less compared to other children. That's what you want us to add. I think that's right, Your Honor. But that's a realistic inquiry for an IJ to undertake in a case by case basis? Absolutely, Your Honor, and I think it's what IJs do today. I mean, I think you can see that in the analysis that the IJ performed in this case. And if you look at the sort of trio of cases where the board itself has interpreted the extreme and unusual hardship standard, they do the same sorts of things. The difference is that they don't conduct a best interest of the child analysis that would let them prioritize those things and give weight to those things under the current interpretation. And so let me give you an example. In the BIA's decision in Andazola, they concluded that the IJ had erred in determining that there was an extreme and unusual hardship because they said, in part, the petitioner had substantial assets in the United States, she had a good stable job, she had a 401k, she had a home, and those assets could set her up to succeed in Mexico. If you were to perform a best interest of the child analysis, that factor, those facts would weigh in favor of finding for eligibility for discretionary cancellation of removal. But the BIA instead held that they found against it because the applicant's daughter wouldn't be left destitute because of the assets that her parent found. So that's the conflict in the BIA's current interpretation and what the best interest of the child analysis requires.  You have a couple minutes for a follow-up. I reserve two minutes on a follow-up. Thank you. We'll hear from the government. May it please the court, my name is Christina Ziden and I represent the Attorney General. Going to the remand question, I'd like to take the court for a moment back to the year 1996 whenever Congress created cancellation of removal. At that time, the CRC was in existence and in fact, the United States had become a signatory to the CRC the year before. And yet, Congress chose to create a hardship standard, an exceptional and extremely unusual hardship standard for cancellation of removal rather than the inquiry turning on the best interest of the child, which had Congress intended for the inquiry to turn on that standard, then Congress was certainly empowered and had the opportunity in its plenary power to make that the standard. But instead, Congress chose hardship. And it's telling that in the 28 years since Congress made that decision, the board has not in a published decision addressed the view that Mr. DeLisi opposes to today. And what we posit is that it's because there's an obvious answer. Congress had the opportunity to make that the standard, to make the best interest of the child the standard, and chose not to do so. And so we believe that in this case, remand is futile for the board to address this fringe feeder because the court has the board's view on the interpretation of the hardship standard from a number of cases that were before the board and also has the views of its sister surrogates as well in the cases that we've recited. Counsel, you said that the United States is signatory to this convention. Is it the nature of a treaty? Because I'm not sure it's ever been ratified. It has not been ratified. The United States signed it, but has not ratified it. That's correct. Can it be binding if it's not been ratified? I mean, are there international agreements that are so broadly approved by every nation on earth that it's part of international law? And the United States is bound by it even if we have not ratified the particular document in which it's embodied. That would be the case only if it rises to customary international law. That's what I'm asking. And so we posit that it does not rise to customary international law, and that it does not rise to customary international law because uniform standards and regulations have not been identified for its functioning in every case. So one thing that this court in Oliva v. U.S. Department of Justice, it considered the question of whether the CRC rises to customary international law. It did not ultimately make a decision, but it did point out there that counsel had, although counsel had pointed to a myriad of contexts where the best interests of the child standard could apply, counsel had not distinguished standards and regulations that can apply in those myriad of contexts. And the same can be said here as well. But even if it does rise to customary international law, the other question is whether Congress's intent conflicts. And if Congress's intent conflicts with customary international law, then Congress's intent controls under the charming Betsy rule. And to hear- Did you address your friend's argument that the standard applies, that the standards would apply differently, whether you look at the best interests of the child or the hardship? Certainly. So our argument is, first of all, that it's not clear that the CRC, that the best interests of the child standard would apply the way that Mr. DeCias is arguing that it would apply. And so, and another thing is that- Well, I thought your argument was that there was no conflict between the two standards, so that it wouldn't make a difference, even if we did adopt the argument that the CRC is customary international law. That's correct under Cabrera-Alvarez, that case in the Ninth Circuit, as well as the Sixth Circuit's view. And that is one way of looking at it. Some circuits have not quite gone that far and have simply said that the hardship standard controls, and so have not really gone that far. But if the Court does go that far, yes, then our view is that there is no conflict. As well, though, we do want to point out that in this- it's not- the argument that's being made here is essentially an argument that that emotional hardship should receive more weight, or that some type of hardship should receive more weight. And that's not really outside of the norm for what we see for these cases. That's- it's a very typical argument that's being framed in a different way. And so, we- but really- But you would concede that this result is not in the best interest of the child? That's- I mean, that- The result that you're defending is not in the best interest of the child. That's correct. We do concede that. But at the same time, that's not the only thing that's required by the- by the hardship analysis. There is also the rigorous comparative standard. And even under the CRC, the best interest of the child need only be a primary consideration. It does not have to be the primary consideration. And drawing from other provisions of the CRC, it does not have to preclude lawful removal of the parent. I guess I'm having trouble understanding still the conflict between the two standards. Even if we say the primary interest of the child, or the primary consideration of the best interest of the child, we can read that together with the comparative component, the exceptional or extremely unusual part of it, which then would require the hardship to the child to be a primary consideration. I don't- I don't see the conflict, I guess, is what I'm trying to say. We agree, Your Honor. We don't see a conflict either under Rivera-Alvarez. What we- to the extent that- to the extent that Mr. Galicia has framed the best interest of the child in a way that would conflict with the hardship standard, then that's- that's really what we're- what we're pointing out is- is that Congress is intended to control. Is- is the word hardship or the hardship standard ambiguous? The word hardship is- is ambiguous under the board's opinion in matter of Montreal, but it's more- it's less- it's less so ambiguous and more subjective, is what we- is what we would argue. It's- it's- it's- it's a standard that is- What's that case? Mon- Montreal? Yes, Mon- Mon- M- O- N- R- E- A- L. And so we- we would- we would- I mean, that's the way the board frames it there is that hardship is- hardship can be viewed in different- in different ways, but then what this- the standard that the board sets out really would cover the same things we might expect to be covered under a best interest of the child standard. The board- the board in that case required immigration judges to look at a child's age, health, school- school performance, and- and a number of other factors that would affect the child, whether- or any- and not just the child, but also it's not just children who are considered under the cancellation of removal statute, but as well parents and- and spouses. And so- and the board required- the board required the immigration judges to examine factors relating either to life in another country or to- to And so here what we're- what we're arguing is that- is that these- is that essentially Congress's intent controls, and it doesn't even seem like there appears to be a conflict here. And so I- I see that my time is up, and so we ask the court to deny the request to remand and to deny the petition for review. Thank you. Thank you, counsel. And we'll hear rebuttal. Thank you, Your Honor. Two points on rebuttal. I want to just quickly address the ambiguity point. I think I heard my friend from the other side agree that the word hardship is ambiguous, but in case there's any doubt about that, the Supreme Court's decision in Zhang Haolong says, the crucial question in this case is what constitutes extreme hardship. These words are not self-explanatory, and reasonable men could easily differ as to their construction. I think the Supreme Court has held that these words are ambiguous. Does that make it ambiguous, or does that make it vague, which is a different concept? I think it makes it ambiguous, Your Honor. And in the Third Circuit's decision in Pareja v. Attorney General, they hold expressly in reliance on Zhang Haolong that this provision is ambiguous. So I think this court, to decide it was unambiguous, would need to- How is hardship more ambiguous than best interest? I don't think that it is more ambiguous than best interest, Your Honor. Hardship is susceptible, to our view, to two different interpretations. One, what circumstances the person is left with, and two, what the loss the person has suffered. And so I think once you determine that the statutory term is ambiguous, you turn to the canons of construction to determine what it means. One of them is the Charming Betsy standard. And is your argument that because hardship is ambiguous, then you also throw out the comparative part? I'm still not sure what to do with that. Absolutely not. Absolutely not, Your Honor. As we interpret the statute, there's a threshold determination about whether or not you would suffer any hardship. And our contention is that the board needs to consider not just the circumstances that someone is left in, but also the loss that they would suffer as part of a best interest analysis. Once you determine that there is a hardship, then you do the comparative analysis. And I think if you look at Mr. Galicia's and the Andazola case, you'd see that if the board or if the IJ were able to consider the best interest of the child as part of that analysis, once they turn to the comparative state, they would at least have the possibility of determining that an exceptionally and usually good parent with good circumstances would satisfy the hardship requirement. And so to answer, Judge Park, your question about what the conflict is here, I think if you're looking for what is the nugget of a conflict, why is it conflict? The question to ask is, would it matter in any case, in this case or in any other case, if you took best interest of the child and put it to the top of the list that the IJ had to consider? It's not the whole list. It's not the predominant factor. But it's at the top of the list, the first thing to consider. If you did that, would it make a difference in any case? I think it would make a difference in Mr. Galicia's case. I think it would have made a difference in Andazola. And that's why I think there's a conflict between this current interpretation. But does that prove too much in the sense that if it makes a difference in this case and in that case and the other, it may well make a difference in half the cases, in which case the Charming Betsy principle is driving the entire analysis? I don't think so, Judge Jacobs, for two reasons. One, I'm not sure that it will make a difference in this case. For my client's sake, I strongly believe that it will, but that'll be up to the- You wouldn't be Exactly. I think it will make a difference in this case. And I think if you look at Andazola, it could have made a difference there. But I will tell you I've worked very hard to try to identify what cases it would make a difference in, and it is not all of them. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisory.